Madam Clerk, will you call the next case for us? We're ready to hear oral argument in case number 21-1207, Sakthivel v. Jaddou. Mr. Bannas? Did I mispronounce that? Bannas? Bannas. Bannas. Good to have you with us, sir. You can take that mask off, if you want to. Yes, sir. Thank you, Your Honor. Bannas, I've got to ask you a threshold question here, and that is, how does your client have any standing? He suffered no harm whatsoever. He has his H-1C visa. He's placed in another job. And even if he had received notice of the possible revocation of the H-1C visa in his previous place of employment, how would he be in a different position today? Your Honor, I assume you're talking about Mr. Sakthivel, or are you talking about all of the plaintiffs? I'm talking about Mr. Sakthivel, but I guess you would include all the plaintiffs in some respect, assuming they have standing at all. But let's just deal with Mr. Sakthivel. Your Honor, Mr. Sakthivel has had to go through a second round of an H-1B lottery. He is preparing to go through, or he is going through the green card process, Your Honor. And one of the questions you have to answer on that form, I-485, is whether you've had any petitions ever revoked or denied because of fraud, Your Honor. The agency will then go through his alien registration file and go do this entire analysis again when his green card is on the line, Your Honor. Further, if he travels out of the country and goes to the consulate, Your Honor, he'll be dealing with the Department of State's interpretation of this damaging material in his file, Your Honor. That's what we saw with Ms. Gadd. But how does that affect his position today with his current employment and he has his H-1C visa? Your Honor, it is true right now that Mr. Sakthivel has an independent H-1B from the one that was tainted by the prior employer, his initial employer. And he is an applicant for adjustment of status, Your Honor. And adjustment of status is the functional equivalent of being, quote, vetted, Your Honor. And so it's not whether he's eligible. It's not whether he has, you know, has the criteria to meet that particular immigrant visa, Your Honor. But how was that issued before Judge Curie in South Carolina? How was that issued? Yes. Your Honor, when we initially filed the case, all of the plaintiffs and the government admitted in its answer to the second amended complaint that all of the plaintiffs had been revoked on notice. You go back to three or to 17? 17, Your Honor. You go back to 17 now. Yes, Your Honor. But she... But you divided them into two different categories. Your Honor, we're going into the fifth year of this case, so I think a little history will help. The first and second amended complaints, Your Honor, we allege that all 17 plaintiffs had been revoked on notice, meaning they'd all, the agency had sent these notices of intent to revoke. They were all identical to the office they knew was abandoned. When they got sent back, they revoked all of them without any notice. That's how they became my clients, Your Honor. They all of a sudden learned, after being in the country for a decade, they didn't have H-1Bs, and they had no idea. And 14 of them got notices again. Correct, Your Honor. And then you've got the other three who the agency relied on the automatic revocation for fraud. Correct? Yes and no, Your Honor. They decided that these three, even though they'd admitted that they had been revoked on notice, that they had been revoked automatically. When it's an automatic revocation under HCFR 212.4, what is it, H-11-2, it's not for fraud, Your Honor. It's just because the employee... The employer withdrew the notice. Okay. So on those three, the automatic revocation plaintiffs. Go back to Judge Hudson's question. How are they injured now? Yes, Your Honor. They were deprived of the CAP-exempt status. I like that word the government uses, CAP-exempt status. Well, they got another visa that they've got now, right? They've all gone through the H-1B lottery again. They've been lucky and gotten chosen again. Ms. Gad was stranded in India for four months during administrative processing while the Department of State considered USCIS as fraud finding. Mr. Joshi was stuck in India for three-plus years until he could win the lottery again. And, again, they're going to have to answer questions about this when they go to their interview for the Green Card. But what relief did you want from the district court? What could she have done? Your Honor, she can set aside the agency's arbitrary determination that they were CAP-exempt, or their CAP-exempt status had been revoked. In the immigration system, Your Honor, when USCIS makes a decision, it all goes in the same pile called the alien registration file. And every time the agency adjudicates a new benefit, they go through the entire thing. Your Honor, all these benefits, adjustment of status, requires a clean past, consistent work authorization, consistent immigration status. They all got visas again. That's what I'm having a real difficult time figuring out is what the injury. It seems like you're speculating that there's some possibility at some unknown time in the future, something bad might happen to them. That doesn't give you jurisdiction. Doesn't give the court jurisdiction. That doesn't give you standing. Well, Your Honor, let's be clear. At the beginning of this case in 2018, every single one of them had been revoked and they'd been told to leave the country in 30 days. Yeah, well, that was then. This is now. Those three have got visas. They can't get anything better than that. How do they have standing? Your Honor, they're going to have to deal with the stigma of this revocation during their next process. That is pending. It's not speculative, Your Honor. My clients are going to their Green Card interviews. They're being harassed and questioned about these revocations and no decisions are being made. Well, they obviously were made in the past or they wouldn't have the visas they've got now. They remain, I'm sorry. Obviously that was done in the past or they wouldn't have the visas they've got now. Your Honor, they have visas due to the exercise of discretion of the agency and that is not something they can rely on going forward. And if they get denied an I-485 because of this implication, they have no ability to challenge that until they're put in deportation and these folks will never be put in deportation because they have underlying non-immigrant status. They're going to remain permanent. H-1B, which is the antithesis of what these statutes encourage, AC-21, ACUIA, they want to go from H-1B to Green Card. And this revocation done willy-nilly with no notice is going to harm them. It's harming them right now. They have no decisions. They've been waiting two and three years for their decisions and their adjustment of status applications. They're terrified to travel. The possibility of revocation doesn't give them the kind of concrete harm that forms the basis of standing. Your Honor, there's no possible revocation. They have suffered revocations here, Your Honor. Just because they've been able to change to a different benefit does not mean that those revocations do not harm them. These folks are now stigmatized by this fraud finding. And that's how these revocations have gone. The agency has revoked them by guilt by association and that guilt is going to stay in their alien registration file, which does not leave them until they become a U.S. citizen. And when they apply to become a U.S. citizen, they're going to have to answer questions about this, Your Honor. A full-throated revocation, excuse me, set aside of this revocation is the only remedy they have as they go forward with the immigration system because they don't magically become citizens and not have to deal with the agency. But how could that be the only remedy? I mean, if there's some adverse decision to them at some future time, they can bring a claim then. They can't, Your Honor. Why not? The Supreme Court has decided in Patel v. Garland that this court does not have jurisdiction over denied I-485. And so if they get denied at the consulate, the Supreme Court has decided there's a doctrine of consular non-reviewability. They can't get reviewed. Mr. Joshi is a perfect example of that. He was traveling to see family when he found out he was revoked. When he went to his consular appointment to go get his routine stamp H-1B that he'd done two or three times, he found out he was revoked. He got stuck in the— Hold on a second. Even if he couldn't challenge that, couldn't he go back at that time and make the challenge you're making now? Challenging a revocation from 2012? No, Your Honor. I don't think so. 2018, right now, they're being harmed in a couple of different ways. They have applications that have been pending since 2016 that there is an injunction in place. That's why this case has gone on so long, frankly. There's an injunction in place that doesn't allow the agency to deny these things. It allows them to approve it. So if the agency was consistent in their position that these revocations that I challenged only related to the visa petition and not to the cap-exempt status, then there would be no barrier for them to be approving all these things in the past, and frankly, these folks would have never hired me because they wouldn't have had to. But the fact is with the three folks, the agency erred. They rejected it properly to get rid of the consequences for the employer or the petitioner, but they also rejected it for fraud under 11.8 U.S.C. 1184 G.3. That says if there's a revocation for fraud, the cap-exempt number is also revoked, and it goes back to someone else from that particular petitioning year. All right. Let's set the three automatic revocation folks aside and go to the other 14. What's their claim in this case? Your Honor, they have revocations from December 2019 that they are still suffering through. Some of them have been able to transition status to be derivatives of their spouses. That means their spouses had to go get an H-1B, then they had to get an H-4, and keep in mind these things are not done overnight, so they have suffered different gaps in work authorization. I understand what the district court did. The district court said, well, you know, look, under the rules, the claims of the 14 and the claims of the three are not the same. Adjudicating one isn't going to affect the other. The three can go forward, but the 14 cannot. They have to go and make another claim. Not in this suit. They have to file their own. My understanding was some of them had done that. The government raises that point. The Rule 20 analysis of the district court, which my recollection is you never responded to. So why is the district court wrong? Your Honor, Rule 15 is the relevant rule for an amendment. We moved under Rule 15. The court held in its decision on page 245 of the record that our motion to amend, to have all 17 go forward, was timely, in good faith, not futile, and would not prejudice the defendant. That's the entire analysis under Rule 15. For 18 months, the client or the defendant in the court was perfectly fine with these 17 folks going on together. Their claims arise from an incredibly unique background, right? These are all victims of this guy from rural Virginia, Danville, who took advantage of 800 foreign nationals over a decade. That background is integral to framing their legally distinct issues, Your Honor. Our argument was that they had been riding together, they should continue to ride together, and that the differences in their legal arguments, first off, once the records were produced, given the government's admission that the three had been denied on notice, we expected to see notices, frankly, but we never got the records because we were challenging a different decision and they didn't provide a complete record. What was the relevance here of the fact that the 14 were all from outside South Carolina? Your Honor, there is no relevance to that. The standard under 28-1391E1A is that if it's a plaintiff, if venue is proper against a government entity, then it's proper for all. And this case exemplifies why that's a good policy and why it's been the policy of the federal courts for 30 years. It only took one, instead of me filing 17 cases. One of the three was from South Carolina. Yes, Your Honor, Mr. Sackville. And Judge Curry said these other 14 are completely different than the three. So she rejected your effort to bring the 14 in. Your Honor, she said it satisfies Rule 15, and for the first time ever when the government said it shouldn't be proper in their response to my motion to amend, she did make some findings in Rule 20. But she also said it was because they shouldn't be able to stay in South Carolina, that they needed a better venue. Tell us why this is what I asked you before. Why was the district court wrong under Rule 20? Because I don't think you ever addressed that. Your Honor, if you look at our complaints, we make Rule 20 allegations sufficiently. And again, they have a shared… Where in your briefing? Your Honor, we didn't file a reply to the motion to amend. The court made big hay of that. Replies in the district of South Carolina are discouraged. Your briefing in this court, the district court ruled on Rule 20. Have you raised that in this court as error? No, Your Honor. We believe the court made a decision on Rule 15 because we moved to amend, and that's what we argued under, Your Honor. That's correct. And again, these 17 all have the same claim. The government admitted they were all revoked upon notice. When they decided to reopen after they lost the motion to dismiss, they decided to reopen everything and try again. All of a sudden, again, after more than a year of litigation, for the very first time ever, the government claimed that these three had been done on automatic. However, the automatic revocations are arbitrary because they revoke the cap-exempt status of the three plaintiffs, and an automatic revocation cannot do that. The government claims now in their most recent filings, no, of course not, that's not what happened. But if you look at the way they've been treated, it absolutely happened. They would not have been allowed to enter the H-1B lottery a second time and get a second cap H-1B if the first one hadn't been fully revoked. They would not have had problems traveling. Mr. Joshi would not have been stuck in India for three years. Ms. Gad would not have been stuck there for four months, almost losing her job. The fact is, these revocations were done haphazardly to punish the victims of this H-1B fraud. They were already victimized, and now the agency is punishing them for that. And for that reason, Your Honor, we would ask that this court reverse and remand this case back to the district court. Thank you. Thank you, sir. Ms. Molina? Good to have you with us. It's a pleasure to be here. Thank you. Good morning, and may it please the Court, Vanessa Molina, on behalf of U.S. Citizenship and Immigration Services. I would first like to address the dispositive issue in this case. Then I would like to address the issues that this Court discussed today. This case, as the Court raised or asked about, is about the fear that the appellants may be denied benefits or their green cards in the future. Appellants just conceded that, and I would like to refer the Court to the argument in their motion to summary. Are you talking about the three appellants that are automatic revocation appellants or the other 14 or both? No, Your Honor. I'm only talking about the three. The certified administrative record relates to the three. The 14 appellants, the only issue there is whether they were correctly dismissed in the analysis of joinder. The certified administrative record and the issue on the merits here, or jurisdiction now, only relates to the three that were revoked automatically. Again, to finish, the joint appendix in page 698, lines 11 to 22, again, that's where plaintiff appellants concede that this is about a future harm. And some of the... They also discuss that this harm will come when they are being adjudicated for their green card or legal permanent residence. We don't know when that will be, so we cannot... We don't even have a date on where that will be. As the plaintiffs also explained to the Court, there's other reasons why those adjudications may take a long time. There's also a claim that Mr. Yoshi was harmed by being in India, and Mr. Yoshi DHS records show that he's entered the United States in 2022. And so even if that harm was sufficient to confer standing, that issue has become moot. And if and when the green cards are being adjudicated, if they're denied, they can seek review of that. And even though Patel says they may not seek review in the district court, they can seek review through a petition for review directly to the corresponding Court of Appeals in the jurisdiction. So it is clear then that there's an agreement between all the parties that the harm may or may not occur during the adjudication of the green card petition. And at this point, it is impossible to know when that will happen because that relies on different circumstances. So I take it your argument here is that none of the three have standing. Correct. Therefore, we have no jurisdiction. Case is over. Correct, Your Honor. That's dispositive because there is nothing that the court can do with the automatic revocations in taking them back. And that goes to my next point where the regulation calls for three occasions where there are automatic revocations, and including one where the employer would have to notify USCIS that it went out of business. There are three times where the regulations say you have to notify USCIS. Well, if you remove that one, which is when the employer has to notify USCIS that it terminated its employer-employee relationship, then the other ones would become superfluous. It wouldn't matter then that an employer would notify USCIS that it went out of business. But it is the regulatory command that employers are responsible for notifying USCIS. And because they can be penalized. Say there's a site visit later on. USCIS conducts a site visit. And they don't find the employees that they requested. Because in order to bring employees to the United States, the employer must show that there's a need. So in that case, the employer would have problems. And I think I'm going to go ahead and move forward with the other issues that this court raised. Another way to summarize this case is that. Why wouldn't you let them amend? You all, the government, kind of took both sides on this thing, didn't they? To change your position. No, Your Honor. If you look at the second amended complaint on paragraph 80, the plaintiffs allege that all of the plaintiffs were revoked on notice. And if you look at the government's answer also on paragraph 80, I'm sorry, it was paragraph 80, the government denied. There was some confusion because the government was responding to initially what the plaintiffs had alleged. Then through the compiling of the certified administrative record, then it came to be known that there were actually two classes. And it was actually plaintiffs who demarcated the two classes and acknowledged that these two classes of individuals, the 3 and the 14, were held under different regulatory schemes. So I think . . . So the district court, as to the 14, as I understand the record, the district court ruled that the 14 could not go forward based on Rule 20. And as I understand opposing counsel's responses, they never challenged that ruling in this court. Correct. Is that your understanding? That is my understanding. So can we conclude from that that they have waived a challenge to the district court's decision? Correct, Your Honor. And as Your Honor noted before, they didn't challenge it in district court either. The government did argue that the two classes were different and that those plaintiffs, the 14 plaintiffs, should go and file suit wherever venue was proper. You were saying it was improper joinder? I'm sorry, improper joinder. Improper joinder. Because of the difference. They had two lawsuits, two types of lawsuits there, and the 14 were in one and the 3 in another one. Correct. So they didn't have any South Carolina plaintiffs in the one anyway, in the 14. I'm sorry, Your Honor. They didn't have any South Carolina plaintiffs in the 14 group. Correct, correct. So they're going to have to go somewhere else. As one did. That's basically your position and the court's position. Correct. And to illustrate that point, one of the original We review that denial of that motion to amend for abuse of discretion. Correct? Correct. And it's the district court relied, again, in its discretion, and it went both ways. In one occasion, it ruled for the plaintiff, and in this occasion, it ruled for the plaintiff because it relied, in its assurance, that the three should move forward because the issues were very simple. And this time it uses discretion for the same very reasons that the court just raised to deny the joinder of the plaintiffs. And so even if plaintiffs contend that they raised it under Rule 15 amendment, under Rule 21, the court can assess on its own, on its own sua sponte, this joinder, the joinder issue. I would also like to make the record clear that the government doesn't have any notice that the plaintiffs were harassed. That was an allegation that was just brought, and I wasn't made aware of any harassment, and this is the first time it was raised. If the harassment would come from plaintiffs being waiting in the consulate, waiting for the consulate in India, again, that issue was moved, and if it took long for them to get here, we would take into consideration the pandemic and how we team 2020, and most recently, earlier this year, the pandemic has relaxed the issue. But those issues were never before the district court. No, I'm just addressing it because there was a claim of harassment, so I don't understand. I just want to clear the record that I don't know what the harassment claim is, and so I can't defend it. There was no harassment as far as the government is concerned, and then implicit in one of the arguments that appellants are now raising in this argument is that the purported effect of this automatic revocation may also hurt them in a citizenship application. Well, if they get to citizenship, that means that they clear the LPR. So, again, that supports the contention that they may or may not be hurt when the LPR adjudication takes place. And also, the automatic revocations were not for fraud. There's nowhere in the record that those were based on fraud. Those were based on the letters that are on the record where the employer notified USCIS of the demarcation of the employer-employee relationship. And nowhere in the revocations does it explain fraud, and that is different than the notice of revocation, that the notice of intent to deny based on the revocation. Those NOIRs, as we call them, did explain the fraud, but not the automatic revocations. Those were based on the notice from the employer. Your Honor, at this point the government would like to reiterate that there's no injury because there's no and it can't be redressed. Therefore, the three plaintiffs do not have standing. If in a future time they are adversely affected during the LPR adjudication, then at that time they may have a claim before this court through a petition for review. Thank you very much. Mr. Banas. Thank you, Your Honor. Three very quick points. While we've been waiting for this appeal, me and Ms. Molina have talked various times because the agency has denied various benefits for these folks because these revocations are harmful to them for both the three and the four. I focused on the folks who got stuck outside of the country, who lost their jobs, who couldn't pay their rent, who couldn't pay their car payments, who couldn't take care of their puppies who were stuck in Arizona with their girlfriend because of these revocations. At the outset of this case, harm was crystal clear, and that's why the agency was willing to bend and give us an injunction that would prevent any adverse decisions based on this rationale going forward. That's the only reason we're still here today, Your Honor, because the moment that injunction is gone, all of those are going to get denied because we've seen a preview of it over the last year and a half. We've seen I-131s get denied because there was fraud somewhere, and it's going to continue. This idea that we can challenge the denial of an I-485 in this court is practically not accurate. Why not? Well, because you have to get put in removal proceedings before you can bring a petition for review, and none of my clients are going to get put in removal proceedings because, A, they don't meet the statutory and the regulatory and the policy criteria for that, and, B, they have underlying non-immigrant status. They have H-1Bs. They're not deportable. And so this idea that if they get an I-485 denied, that they can challenge it in district court is just not true. And the district courts that are addressing Patel right now are saying, no jurisdiction, no jurisdiction. And so this is our forum. You know, we challenged it as soon as we learned about the revocations five years ago, and they haven't been able to see the record and make their challenge yet. And I will say, we filed this case right around Thanksgiving of 2018. From that point forward, the agency never once challenged venue or joinder until they agreed and consented to a motion to amend and then change their scope of consent. We did challenge the Rule 15 finding, Judge Agee. We did appeal it. We did raise it. We did say that my motion to amend, which was the relevant court rule. The district court ruled under Rule 20. That's the pertinent question as to whether or not you raised a challenge to that ruling. I disagree, Your Honor. I think the relevant question is I moved under Rule 15. The judge made a decision under Rule 15. If she used the idea of joinder to say, I don't want to exercise discretion, I would say that we said when a lower court finds that the proposed amendment is good faith, not futile, for proper reasons, not prejudicial, that that should outweigh this idea of joinder. Are you saying you can't have a Rule 15 and a Rule 20 in the same proceeding? I think you can, Your Honor, but I think you would want to see the government move under Rule 20, do something with Rule 20. The government argued venue, Your Honor. So we argued venue. This idea that, again, we didn't file a reply should not be dispositive of any of this. Replies are discouraged in South Carolina. They're not required filings. And if the agency raised a new issue in its response, the government or the court should have given us an opportunity to respond, period, regardless of this reply. You say replies are discouraged? I believe so under the local rules, Your Honor. The courts don't want to see reply briefs? As I'm sure your clerks don't want to. Well, I like reply briefs. I really think that boils things down usually. Well, I don't disagree, Your Honor. However, replies are not required. A motion in response certainly is. And the last thing I will say, Your Honor, is this idea that the automatic revocations didn't do the two parts of it, right? The revocation of the employer's responsibilities. The employees are gone. We don't really care about them. But also the revocation of the cap-exempt status under 1184G3, the reason there's no evidence of that in the record is the record is fully incomplete to even do that analysis. They didn't include the porting documents. They didn't include how they treated those. And so the agency has intentionally limited its record and is taking advantage of the incomplete record in front of this court and the last court. And for those reasons, this court should reverse and remand. Thank you, Your Honors. Thank you, sir. Good to have you with us.
judges: Robert B. King, G. Steven Agee, Henry E. Hudson